# IN THE SUPREME COURT OF TEXAS

No. 17-0058

LARRY EDDINGTON, VINCENT J. AURENTZ,
AND WILLIAM J. BUTLER, PETITIONERS,

v.

DALLAS POLICE AND FIRE PENSION SYSTEM
AND GEORGE TOMASOVIC, IN HIS OFFICIAL
CAPACITY AS BOARD CHAIR, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS

**Argued October 11, 2018**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

JUSTICE GUZMAN and JUSTICE BROWN did not participate in the decision.

Public pension systems are struggling to maintain solvency, whether due to poorly constructed benefit plans, unrealistic investment expectations, the economic downturn of the past decade, or the aging of the population.[1] Article XVI, Section 66 of the Texas Constitution prohibits

---

[1] *See, e.g.*, Sarah Krouse, *State and Local Pension Woes Are Starting to Bite—The Shortfall Is Hitting Retirees with Little Time to Engineer a Plan B*, WALL ST. J., July 30, 2018, at A1 (estimating that the liabilities of public defined-benefit pension plans in the U.S. are in the trillions of dollars); Nathan H. Jeppson et al., *Defining and Quantifying the Pension Liabilities of Government Entities in the United States*, 29 J. CORP. ACCT. & FIN. 98, 98 (2018) (estimating public defined-benefit pension liabilities to be more than $5 trillion). As of December 2015, there were 93 actuarially funded, defined-benefit public retirement systems in Texas with some $241 billion in net assets and about 2.4 million members. TEX. PENSION REVIEW BD., GUIDE TO PUBLIC RETIREMENT SYSTEMS IN TEXAS 4 (Report to the 85th Leg., Feb.

the reduction or impairment of certain benefits under local public retirement systems.[2] The Dallas Police and Fire Pension System ("the System") amended its pension plan to reduce the interest rate paid on Deferred Retirement Option Plan ("DROP") accounts. Petitioners contend that the reduction violates Section 66. We disagree because the change was prospective only and did not impact benefits accrued or granted within the meaning of the constitutional provision. Accordingly, we affirm the judgment of the court of appeals.[3]

## I

The System provides comprehensive retirement, death, and disability benefits for some 9,300 Dallas police officers, firefighters, pensioners, and qualified survivors.[4] Officers and firefighters become System members automatically when they enter the training academy. While in active service, they and the City of Dallas contribute to their accounts. We describe the System's retirement plan in general terms, ignoring various exceptions and specific provisions that do not affect our analysis of the constitutional issue presented here.

A member reaching retirement age can leave active service and begin drawing a monthly annuity based on the product of his average pay and length of service. A member can also continue working and when leaving active service, draw a higher monthly annuity due to his longer term of service and the pay raises received after reaching retirement age. The plan's DROP program, created

---

2017).

[2] TEX. CONST. art. XVI, § 66.

[3] 508 S.W.3d 774.

[4] The pension plan is authorized by TEX. REV. CIV. STAT. ANN. art. 6243a-1.

2

in 1993,[5] gives members who continue working past retirement eligibility another option. The member's annuity is fixed at retirement age and does not increase with continued service, but while he continues to work, monthly payments are credited to his DROP account, accessible upon leaving active service. In effect, members working past retirement eligibility can choose between a higher annuity on leaving active service, or a lower annuity plus a forced savings account, as it were—a lump sum of payments that accrued while they continued working.[6] Over 1,400 active members elected DROP when it was first offered.

At first, DROP accounts bore interest.[7] In 1998, the System guaranteed a rate of not less than 8% nor more than 10%. Years later, when 40% of System assets were in DROP accounts, the growing disparity between DROP interest owed and the declining return on System investments created a deficit to be made up from the plan's general assets. The System determined that, unless the DROP interest rate was reduced, the plan would become unstable, and the System could not meet its monthly payment obligations.

---

[5] *See* Act of May 26, 1993, 73rd Leg., R.S., ch. 872, § 1, 1993 Tex. Gen. Laws 3432, 3465–3467 (codified as amended at TEX. REV. CIV. STAT. art. 6243a-1, § 6.14).

[6] TEX. REV. CIV. STAT. art. 6243a-1, § 6.14(c). Until 2017, the statute provided, with exceptions and restrictions, that "on leaving active service . . . , a member who participates in DROP shall begin to receive the balance in the person's DROP account under one of the following methods of distribution elected by the member: (1) a single-sum distribution . . . ; (2) an annuity to be paid in equal monthly payments for the life of the member, . . . determined as of the date the member leaves active service based on the person's account balance and age . . . ; or (3) substantially equal monthly or annual payments of the person's account balance . . . extending over a fixed period that does not exceed the life expectancy of the member". 1993 Tex. Gen. Laws at 3465–3466.

[7] 1993 Tex. Gen. Laws at 3465 ("Amounts held in a member's DROP account shall be credited at the end of each calendar month with interest".). The amended statute in 2017 dropped this requirement. *See* TEX. REV. CIV. STAT. art. 6243a-1, § 6.14(c) ("Amounts held in the DROP account of a member shall be credited at the end of each calendar month."); *id.* § 6.14(f-1) ("The DROP account of a member who begins participating in DROP on or after September 1, 2017, does not accrue interest.").

In 2014, the retirement plan was amended with the approval of the System board and 88% of the active members voting. The amendment provided that the DROP floor interest rate would be reduced 1% each year for three years, from 8% to 5%, beginning in 2015. After that, DROP interest would be based on investment performance and could range between 7% and zero. The reductions were prospective only. They did not affect interest already accrued. The decision to enter DROP is irrevocable. Recognizing that a member's decision might have been based on the prospective interest rate, the amendments allowed active DROP participants a one-time opportunity to revoke their election.[8]

Petitioners, three pensioners who elected DROP before the 2014 amendment,[9] sued the System, asserting that the change in interest rate reduced or impaired service retirement benefits granted or accrued in violation of Article XVI, Section 66 of the Texas Constitution. Petitioners contend that the DROP program is itself a benefit protected by Section 66, or if not, the formula for calculating annuities is, or at least the interest rate is. The System contends that only annuity payments themselves are protected benefits.

Initially, after a bench trial, the trial court rendered judgment that the lowering of the DROP interest rate violated Section 66. But the court granted the System's motion for reconsideration and ruled instead that reducing the DROP account interest rate prospectively did not violate Section 66.

[8] The amendments also reduced the contribution rate for active DROP participants from 8.5% to 4% of computation pay and provided that members hired after March 1, 2011, who had previously been denied interest on their DROP accounts, would be entitled to the interest rate available to all DROP participants regardless of hire date, and their time to vest would be reduced from 20 to 10 years.

[9] Larry Eddington, 72, began working for the City in 1967, elected DROP in 1997, and retired in 1999. Vincent J. Aurentz, 67, began working for the City in 1970, elected DROP in 2002, and retired in 2009. William J. Butler, 85, began working for the City in 1970, elected DROP in 1993, and retired in 1996.

The court concluded that the "service retirement benefits" protected by Section 66 are monthly pension annuities and "do[] not include DROP or any DROP-related benefits." Petitioners moved for reconsideration and to reopen the evidence for testimony and legislative history materials to show that in adopting Section 66, the Legislature intended to protect the DROP program and its formula for calculating annuity payments. The trial court denied the motion and petitioners made an offer of proof.

The court of appeals affirmed.[10] Based on the Fifth Circuit's analysis in *Van Houten v. City of Fort Worth*,[11] involving a challenge under Section 66 to a different change in retirement benefits, the court concluded that "the term 'benefits' as used in Section 66 'refers to payments and does not encompass the formula by which those payments are calculated.'"[12] "[A]ssuming without deciding", the court wrote, that "DROP is a 'service retirement benefit,' we conclude the DROP interest rate is not among the 'benefits' protected by Section 66."[13]

We granted the pensioners' petition for review.[14]

---

[10] 508 S.W.3d 774, 790.

[11] 827 F.3d 530 (5th Cir. 2016).

[12] 508 S.W.3d at 787 (quoting *Van Houten*, 827 F.3d at 535).

[13] *Id.* at 788.

[14] 61 Tex. Sup. Ct. J. 1212 (June 1, 2018).

**II**

We consider first what benefits are protected by Section 66, and then whether the change in the DROP interest rate violates that provision.

**A**

Article XVI, Section 66, adopted in 2003, applies to a local (i.e., not statewide) "public retirement system" that provides "service retirement benefits" to public officers and employees.[15] Since petitioners elected DROP before Section 66 was adopted, and the interest rate was changed afterward, the provisions at issue here state:

> (d)      On or after the effective date of this section, a change in service or disability retirement benefits or death benefits of a retirement system may not reduce or otherwise impair benefits accrued by a person if the person:
>
> > (1)      could have terminated employment or has terminated employment before the effective date of the change; and
>
> > (2)      would have been eligible for those benefits, without accumulating additional service under the retirement system, on any date on or after the effective date of the change had the change not occurred.
>
> (e)      Benefits granted to a retiree or other annuitant before the effective date of this section and in effect on that date may not be reduced or otherwise impaired.[16]

Section 66(c) states that the provision "does not apply to benefits that are: (1) health benefits; (2) life insurance benefits; or (3) disability benefits that a retirement system determines are no longer

---

[15] TEX. CONST. art. XVI, § 66(a). Section 66 "does not apply to a public retirement system that provides service and disability retirement benefits and death benefits to firefighters and police officers employed by the City of San Antonio." *Id.* § 66(b). Section 66 allowed voters of a political subdivision to opt out of the constitutional protection by a vote in May 2004. *Id.* § 66(h). None did.

[16] *Id.* § 66(d)–(e).

payable under the terms of the retirement system as those terms existed on the date the retirement system began paying the disability benefits."[17] Although Section 66 does not define "benefits" generally, subsection (c) specifically references "benefits . . . payable" and "paying . . . benefits."

Section 66 overruled this Court's 1937 decision in *City of Dallas v. Trammell*.[18] Trammell retired from the City of Dallas after 20 years' service, entitling him to a pension equal to half his salary at the time, or $183.33 per month.[19] But Texas, like the rest of the country, was struggling through the Great Depression, and the Legislature amended the statute governing Trammell's pension to cap the amount due, thereby reducing Trammell's monthly payment to $72.36.[20] We held that a "pensioner has no vested right [to future installments of a pension], but same may be diminished by the adoption of a different standard of measurement than that adopted at the date of retirement of the pensioner."[21] That is, retirement payments could be reduced after the pensioner had earned them and was due payment. And "[r]egardless of the . . . method by which the reduction is accomplished," we added, "this case upholds the power of the legislative body to bring it about."[22] Despite the unpopularity of the *Trammell* decision and other states' efforts to protect pension benefits, Texas held its course for 66 years until Section 66 was adopted.

---

[17] *Id.* § 66(c).

[18] 101 S.W.2d 1009 (Tex. 1937).

[19] *Id.* at 1009–1010.

[20] *Id*. at 1010.

[21] *Id*. at 1017.

[22] *Id*.

Trammell suffered a reduction in annuity payments he had earned over his term of service.[23] The United States Court of Appeals for the Fifth Circuit found this to be significant in interpreting Section 66 in *Van Houten v. City of Fort Worth*.[24] Fort Worth operates a defined benefits pension plan for its employees.[25] Before 2012, it calculated annuities as 3% of the product of a retiring employee's length of service and the average of his three highest annual salaries.[26] The plan also allowed employees to choose either a 2% simple COLA (cost-of-living-adjustment) or one with a variable, compounded rate between 0% and 4%.[27] In 2012, Fort Worth changed the annuity formula, using five instead of three of the employee's highest annual salaries and reducing the multiplier from 3% to 2.5%.[28] The change was prospective only—a member's annuity was calculated using the former plan terms for the period of service up to the point of change, then the amended terms afterward.[29] Fort Worth also prospectively eliminated the variable, compound COLA for existing employees so that they were limited to the 2% simple COLA going forward.[30]

---

[23] *Id.* at 1009–1010.

[24] 827 F.3d 530, 537–538 (5th Cir. 2016).

[25] *Id.* at 532.

[26] *Id*. at 533.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

Employees hired before the 2012 changes sued.[31] Adhering closely to the text of Section 66, the court held that the provision protects only accrued benefits based on service rendered and not benefits expected but as-yet unearned for future service.[32] Protected benefits, the court concluded, were annuity payments and not the formula for calculating them.[33] And Section 66 did not prohibit Fort Worth from reducing the amount of a COLA prospectively.[34]

The plaintiffs had relied on a 2008 Texas Attorney General Opinion construing Section 66(d) to "prohibit a change in the method of determining the compensation base of vested employees if such action reduces or impairs retirement benefits that the employee would have been eligible to receive before the effective date of the change."[35] The Circuit disagreed with the opinion's analysis, noting that, after finding Section 66's text and legislative history unhelpful, the opinion based its ultimate holding on "other state supreme courts, particularly those of New York, Illinois, and Alaska."[36] It was problematic, the Circuit noted, to assume that Texas had suddenly decided to copy these states, particularly with respect to public pension protection.[37]

---

[31] *Id.* at 532–533.

[32] *Id*. at 534–535.

[33] *Id.* at 535.

[34] *Id.* at 539.

[35] TEX. ATT'Y GEN. OP. No. GA-0615, at 12 (2008).

[36] *Van Houten*, 827 F.3d at 536.

[37] *Id*. at 537.

**B**

We are not, of course, bound by our sister court's interpretations of the Texas Constitution, but here, we find ourselves in agreement with *Van Houten*.

Petitioners base their claims on subsection (e) of Section 66, but their claims fail under both subsection (d) and subsection (e). Those provisions prohibit changes that "reduce or otherwise impair" benefits that have been "accrued"[38] or "granted."[39] Lowering the interest rate that as-yet-unearned DROP payments will bear does not affect a benefit accrued or granted to employees. Interest already credited to DROP accounts is not impacted. The reduction in DROP account interest is prospective only.

Petitioners argue that the entire DROP plan is itself a benefit protected by Section 66, and reducing the DROP interest rate reduces, or at least impacts, the plan. Alternatively, petitioners argue that the formula for calculating a retirement annuity—length of service x average compensation x multiplier + interest—is a protected benefit, or at least the interest rate component is. In essence, petitioners contend that the entire plan, or at least the formula for calculating annuity payments, is a contract between the System and a member that cannot be changed. But Section 66(d) protects "accrued" benefits.[40] The common definition of "accrue" is "to be periodically accumulated in the process of time".[41] We agree with *Van Houten* that "accrued" benefits under Section 66(d) are

---

[38] TEX. CONST. art. XVI, § 66(d).

[39] *Id.* § 66(e).

[40] *Id.* § 66(d).

[41] *Accrue*, WEBSTER'S THIRD NEW INT'L DICTIONARY (2002).

10

those that have been earned by service, not those that may be earned by future service.[42] "Benefits accrue on an ongoing basis as service is performed, and accrued benefits are those benefits that have been earned to date."[43] Section 66(e) refers to benefits "granted" before the provision's effective date.[44] Petitioners argue that "accrued" and "granted" are distinct concepts. But the use of "granted" rather than "accrued" cannot reasonably be read to mean that protected benefits are different before and after Section 66's effective date. In context, "granted" in Section 66(e) has the same meaning as "accrued" in Section 66(d).

As we have noted, while Section 66 does not define benefits, subsection (c)'s exclusions—referring to "benefits . . . no longer payable" and "terms of . . . paying . . . benefits"[45]—strongly suggest, at least in the present context, that the protected benefits are the pensioner's annuity payments. As the court concluded in *Van Houten*, "[t]he term 'benefits' refers to payments and does not encompass the formula by which those payments are calculated."[46] Petitioners argue that Section 66's express inclusion of payments as protected benefits does not mean that other parts of the retirement plan are not also protected. While we accept this logical possibility, petitioners point to nothing else in the text of Section 66 that suggests that all retirement plan terms are protected benefits.

---

[42] *See Van Houten*, 827 F.3d at 535.

[43] *Id.* at 534.

[44] TEX. CONST. art. XVI, § 66(e).

[45] *Id.* § 66(c).

[46] *Van Houten*, 827 F.3d at 535.

11

Petitioners argue, joined by George Stalnaker and others as amici curiae, that the trial court erred in excluding Stalnaker's testimony and the fiscal notes of the Legislative Budget Board that accompanied the bill adopting Section 66, which, they argue, show that the drafters of Section 66 intended it to cover DROP plans in their entirety. Stalnaker argues that "[h]aving shepherded the passage of the legislation, he is likely the person with the most understanding of the amendment, the context in which it was enacted, and the protections the Legislature and voters intended."[47] "In construing the Constitution, . . . the fundamental guiding rule is to give effect to the intent of the makers and adopters of the provision in question."[48] We may consider a provision's history, "the conditions and spirit of the times" in which it was adopted, "the prevailing sentiments of the people" who framed and adopted it, "the evils intended to be remedied, and the good to be accomplished."[49] But "[w]e rely heavily on the literal text."[50] Petitioners and amici argue that "benefits" could include more than payments, but amici do not argue that "accrued" can refer to benefits not yet earned, and while petitioners make that argument, it is simply inconsistent with the plain meaning of the word, as *Van Houten* concluded.[51] Because we conclude that the text of Section 66 is plain as it affects this case, the trial court did not err in refusing to reopen the case for evidence of the intent of supporters of passage of Section 66 and excerpts from the legislative history.

---

[47] Br. of Amicus Curiae George Stalnaker at v.

[48] *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 586 (Tex. 2013) (quoting *Harris Cty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009)).

[49] *Id.*

[50] *Id.*

[51] *See Van Houten*, 827 F.3d at 535.

The amendments to the System's plan reducing DROP interest rates operated only prospectively, just as the changes at issue in *Van Houten*.[52] For this reason, the change in DROP interest rates did not violate Section 66. The amendments also allowed participants a one-time opportunity to revoke their decision to enter DROP. Petitioners offered no evidence that members would not have entered DROP had they known the interest rates on their accounts could decrease in the future. But if any member's decision did turn on DROP interest rates, he could have elected to participate in another plan to maximize his retirement benefits.

*  *  *  *  *

We conclude that the pension plan amendments do not violate Section 66 because the DROP account interest rate change is prospective and will not impact funds deposited before the amendments became effective. Accordingly, the judgment of the court of appeals is

<em>Affirmed.</em>

<br>

_____

Nathan L. Hecht
Chief Justice

Opinion delivered: March 8, 2019

---

[52] *See id.* at 533.