# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 20, 2019

Lyle W. Cayce
Clerk

No. 18-10423

LADONNA DEGAN; RIC TERRONES; JOHN MCGUIRE; REED HIGGINS; MIKE GURLEY; LARRY EDDINGTON; STEVEN MCBRIDE,

> Plaintiffs - Appellants

v.

THE BOARD OF TRUSTEES OF THE DALLAS POLICE AND FIRE PENSION SYSTEM,

> Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CV-1596

Before BARKSDALE, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:*

Several beneficiaries of the City of Dallas pension fund for police and firefighters (collectively "Plaintiffs") sued the City over changes to the pension fund they contend violate the United States and Texas Constitutions. Because we conclude that the Texas constitutional questions should be certified to the Supreme Court of Texas and that the resolution of those questions will impact

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-10423

the case as a whole, we certify the questions set forth below and stay the remainder of the case pending the outcome in the Supreme Court of Texas (i.e., whether certification is accepted and, if it is, what result is reached).

We briefly discuss the facts and the arguments and then articulate the certified question.

## I.     Background

The City of Dallas has provided its police and firefighters a pension fund program since at least 1997. The pension fund was created in accordance with state law and is administered by the Board of Trustees of the Dallas Police and Fire Pension System ("the Board").

Among the advantages of the pension fund are Deferred Retirement Option Plans or DROP accounts. DROP accounts are a statutory creation of the Texas legislature. *See* TEX. REV. CIV. STAT. ANN. art. 6243a-1, § 6.14 (2011).[1] They were created for City employees who reach retirement age but who elect to continue working. *See id.* § 6.14(a). Rather than retiring and receiving the pension funds they would be entitled to, employees continue working and the money they would have received each month under the pension is credited to an individual DROP account. *See id.* § 6.14(c). There, the employees' money continues to garner interest. *See id.* § 6.14(c). Once employees leave active service, they begin receiving their monthly pension payments instead of the payments being credited to the DROP account. *Id.* § 6.14(a). They can also begin accessing the funds that previously built up in their DROP account. *Id.* § 6.14(a). By statute, employees were previously able to elect one of three ways to receive the DROP funds that were paid on top of their remaining pension benefits: (1) as "a single-sum distribution," (2) as "an

---

[1] The allegations in the complaint cover 1997 to the present, and article 6243a-1 has been amended multiple times during that period.

2

annuity to be paid in equal monthly payments for the life of the member," or (3) as "substantially equal monthly or annual payments" in an amount designated by the member.   *Id.* § 6.14(d).

The pension fund began to suffer various financial problems.  In 2014, the Board proposed reducing the interest rate that applied to the increasingly dominant DROP accounts.  *See Eddington v. Dall. Police & Fire Pension Sys.*, No. 17-0058, 2019 WL 1090799, at *2 (Tex. Mar. 8, 2019).  Members of the fund approved the proposal and the interest rate began to gradually drop.  *Id.*  But losses in the pension fund continued. The problem worsened when DROP participants increasingly began electing lump-sum withdrawals instead of spreading them out over time.  The pension fund entered the same downward spiral that happens during a bank run.

Mayor Michael Rawlings halted the run in December 2016 by filing a state court lawsuit against the Board and the pension fund.  He received a temporary restraining order prohibiting the pension fund from paying out funds from any DROP accounts.  The next month, the Board adopted an addendum that temporarily prohibited any DROP withdrawals except for "required minimum distributions and unforeseeable emergency withdrawals." The addendum nullified "all DROP withdrawal requests on file with [Dallas Police and Fire Pension], including requests for both lump sum payments and monthly installments."  After the temporary freeze, participants would then receive distributions based on their pro-rata share of DROP funds and a formula defined by the plan.  Retirees could also elect to receive an annual distribution of $30,000 or $36,000 depending on the year.   Finally, the addendum granted retirees the option of withdrawing funds for certain unforeseeable emergencies.

Months after the Mayor's and Board's actions, the Texas Legislature amended the pension statute. *See* Act of May 30, 2017, 85th Leg., R.S., ch. 318,

No. 18-10423

2017 Tex. Sess. Law Serv. Ch. 318 (H.B. 3158) (amending, *inter alia*, TEX. REV. CIV. STAT. ANN. art. 6243a-1). Instead of permitting retirees to elect lump-sum or adjusted monthly payments, the statute now permits only an annuitized option. *See* TEX. REV. CIV. STAT. ANN. art. 6243a-1, § 6.14(e). By its terms, the change applies to those who had already left active service and were receiving DROP payments, as well as those who would leave active service in the future. *Id.*

Many years before these events, Texas voters had approved a constitutional amendment protecting public retirement systems like Dallas's pension fund. The amendment is embodied in article XVI, section 66 of the Texas Constitution. At its heart, the amendment protects "service . . . retirement benefits" from being "reduce[d] or otherwise impair[ed]." TEX. CONST. art. XVI, § 66(d). ("Section 66").

After the pension statute was amended, Plaintiffs filed suit under the United States Constitution's Takings Clause and under the Texas Constitution challenging their inability to obtain lump-sum distributions. Plaintiffs consist of individuals who elected lump-sum withdrawals and adjusted monthly payments. Each made their election prior to the 2017 amendment of the pension statute. Some had already begun receiving adjusted monthly payments, which were discontinued in favor of the annuitized amount. The district court ruled against the Plaintiffs, and they timely appealed.

## II. Discussion

The parties disagree about whether DROP accounts are "service retirement benefits" (and therefore protected by Section 66) and whether the DROP withdrawal change reduces or impairs the benefit (and therefore prohibited by Section 66). Plaintiffs filed an opposed motion to certify the

4

No. 18-10423

Section 66 questions to the Supreme Court of Texas.[2]  The motion was carried with the case and ultimately referred to this panel for consideration of the merits of this case and the motion to certify.[3]

The Texas Constitution grants the Supreme Court of Texas the power to answer questions of state law certified by a federal appellate court.  TEX. CONST. art. V, § 3-c(a).  Texas rules provide that we may certify "determinative questions of Texas law having no controlling Supreme Court [of Texas] Precedent" to the Supreme Court of Texas.  TEX. R. APP. P. 58.1.

Generally, three considerations govern the decision to certify.  *See Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 522 (5th Cir. 2015).  In sum, the three factors are (1) the closeness of the question; (2) considerations of comity in the particular case; and (3) practical limitations such as the possibility of delay and difficulty of framing the issue.  *Id.*

We conclude that consideration of these factors warrants certification. First, the question of whether the DROP withdrawal change violates Section 66 is open.  In *Eddington v. Dallas Police and Fire Pension System*, a DROP participant challenged the reduction of the interest rate on DROP funds.  *See* 2019 WL 1090799, at *2.  The court rejected his claim because "the change was prospective only and did not impact benefits accrued or granted within the meaning of the constitutional provision."  *Id.* at *1.

---

[2] The Board asserts that Plaintiffs failed to make a claim under Section 66.  We disagree.  Their complaint clearly asserted violations of the Texas Constitution and referenced Section 66.  Additionally, the district court considered and ruled upon the constitutionality of the Board's actions in light of Section 66.  We thus conclude that the matter is properly before us.

[3] In their supplemental briefing after the *Eddington* case issued, Plaintiffs took the position that *Eddington* shows that they should prevail on a key issue and provides "sufficient guidance" on the rest, making certification unnecessary.  As discussed below, we do not agree that *Eddington* clearly disposes of the different issues presented here.

No. 18-10423

It is unclear to what extent, if any, that reasoning applies here and, perhaps unsurprisingly, the parties' supplemental briefing evinces vastly different readings of *Eddington*. According to the complaint, all Plaintiffs had elected how they would receive payments from their DROP accounts before the DROP withdrawal change became effective. Some of them had already received payments for years before the change. The DROP withdrawal change thus seems to retroactively nullify a retiree's election about how to receive funds in a DROP account. Additionally, unlike interest rate changes, the DROP withdrawal change seems to relate to how and when a retiree can access the pension funds they previously accrued or granted benefits; all the funds in the accounts were earned through previous service and then credited based on time since retirement eligibility. This issue is thus much closer than the issue in *Eddington* or our previous case *Van Houten v. City of Fort Worth*, 827 F.3d 530, 538 & 540 n.10 (5th Cir. 2016) (deciding without certification that future, unearned benefits were not "accrued benefits" under Section 66).

The other two factors heavily favor certification. Comity is particularly important here. *Swindol*, 805 F.3d at 522. This case is about the validity of a state statute's application, the interpretation of the state constitution, and the future of municipal pension funds in the state involving critical employees (first responders) of a large city. Finally, no "practical limitations" hinder certification because the Supreme Court of Texas has already analyzed a closely related issue and developed a reputation for a speedy, organized docket. *Id.* No delay is likely, and neither party will be prejudiced by certification. We thus certify two questions to the Supreme Court of Texas.

### III. Certified Questions

1.    Whether the method of withdrawal of funds from Deferred Retirement Option Plan is a service retirement benefit protected under article XVI, section 66 of the Texas Constitution.

6

No. 18-10423

2. If the answer to Question 1 is "yes," then whether the Board of the Dallas Police and Fire Pension's System's decision, pursuant to the Texas statute in question, to alter previous withdrawal elections and annuitize the DROP funds over the respective life expectancy of the Plaintiffs violates Section 66 of the Texas Constitution.

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the questions certified.

Accordingly, we CERTIFY the foregoing questions, direct the Clerk's Office to forward this opinion to the Supreme Court of Texas to determine whether to accept the certification, and STAY the remainder of this case pending determination by the Supreme Court of Texas.



**A True Copy**
**Certified Mar 20, 2019**

*Jyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**