**Affirm and Opinion Filed November 9, 2023**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-22-00644-CV**
_____

**DALLAS POLICE RETIRED OFFICERS ASSOCIATION, Appellant**
**V.**
**DALLAS POLICE AND FIRE PENSION SYSTEM AND NICHOLAS A.**
**MERRICK IN HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE**
**BOARD OF TRUSTEES OF THE DALLAS POLICE AND**
**FIRE PENSION SYSTEM, Appellees**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-11982**

## MEMORANDUM OPINION

Before Justices Molberg, Pedersen, III, and Miskel
Opinion by Justice Pedersen, III

Appellant Dallas Police Retired Officers Association (DPROA) sued appellees Dallas Police and Fire Pension System and Nicholas A. Merrick in his official capacity as Chairman of the Board of Trustees of the System (together, the System or appellees), seeking relief under the Texas Declaratory Judgment Act. DPROA's original petition alleged that certain changes to DPROA's pension plan were unconstitutional. The System filed a summary judgment motion defending the changes; DPROA filed a cross-motion for summary judgment on the same issues.

The trial court granted the System's motion and denied DPROA's cross-motion. DPROA appeals, alleging that the trial court erred in granting the System's motion for summary judgment and in awarding attorney's fees. We affirm.

## BACKGROUND

The substance of DPROA's challenge involves two amendments to the DPROA's pension plan that were enacted by the Texas Legislature in 2017 and were adopted by the System (the 2017 Amendments).[1] These amendments changed provisions that had provided scheduled increases to certain pensioners' annuity payments—one annually and one monthly.

First, the 2017 Amendments re-wrote the provision known as the Annual Adjustment. According to the pre-amendment statute, on the first day of October each year, a retirement pension was increased by four percent (4%) of the original retirement benefit amount.[2] After amendment, this annual 4% increase in a base pension was replaced by an adjustment in "a percentage equal to the average annual

---

[1]  Act of May 25, 2017, 85th Leg., R.S., ch. 318, 2017 Tex. Gen. Laws 639.

[2]  The statute provided:

> Annually on the first day of October, a retirement pension calculated under Section 6.01 or 6.02 of this article, a disability pension calculated under Section 6.04 or 6.05 of this article, or a death benefit calculated under Section 6.07 or 6.08 of this article currently in pay status, or pending board approval on the last day of September, will be increased by an amount equal to four percent, not compounded, of the original amount of the retirement or disability pension or death benefit.

Act of May 26, 1993, 73rd Leg., R.S., ch. 872, § 6.12(a), 1993 Tex. Gen. Laws 3432, 3464 (amended 2017) (current version at TEX. REV. CIV. STAT. art. 6243a-1, § 6.12).

–2–

rate of actual investment return of the pension system for the five-year period ending on the December 31 preceding the effective date of the adjustment less five percent." TEX. REV. CIV. STAT. 6243a-1, § 6.12(b). This adjustment cannot be less than zero percent (0%) or more than 4%. *Id.* § 6.12(c). In addition, the System could only make such an adjustment "if the ratio of the amount of the pension system's market value of assets divided by the amount of the pension system's actuarial accrued liabilities, after giving effect to the adjustment, is not less than .70." *Id.* § 6.12(d). And finally, a pensioner would not receive an adjustment until the first October 1 after (a) the pensioner's retirement and (b) the earlier of the pensioner's turning 62 years of age, or the third anniversary of his retirement.[3] *Id.* § 6.12(f).

DPROA's second challenge to the 2017 Amendments involves an amount known as the Monthly Supplement. Prior to 2017, a pensioner who had twenty years' service or who was on a disability pension—once he reached the age of fifty-five— would receive a monthly supplemental payment of the greater of $75 or three percent (3%) of his benefit.[4] After the 2017 Amendments, this Monthly Supplement was

---

[3] Similar restrictions applied to an adjustment to the benefits of a qualified survivor of a pensioner. *Id.* § 6.12(f).

[4] The relevant provision stated:

If a pensioner had at least 20 years of pension service under any plan adopted pursuant to Article 6243a or this article, or if a pensioner is receiving a service-connected disability pension, the pensioner, the pensioner's qualified surviving spouse who is eligible to receive benefits under this article, or the pensioner's qualified surviving children, as a group, under Section 6.06(o) of this article are entitled to receive, when the pensioner or qualified surviving spouse attains 55 years of age, the greater of a monthly supplement equal to $50 or three percent of their total monthly benefit, and for years beginning on and after

eliminated for any pensioner who was not already receiving the benefit before September 1, 2017. *Id.* art. 6243a-1 § 6.13(b) ("A person described by Subsection (a) of this section who, on September 1, 2017, is not receiving or has not received a supplemental benefit under this section is not entitled to receive a supplemental benefit under this section.").

DPROA's claim for declaratory relief is rooted in the Texas constitution, which states in relevant part:

> (d) On or after the effective date of this section, a change in service or disability retirement benefits or death benefits of a retirement system may not reduce or otherwise impair benefits accrued by a person if the person:
>
>> (1) could have terminated employment or has terminated employment before the effective date of the change; and
>>
>> (2) would have been eligible for those benefits, without accumulating additional service under the retirement system, on any date on or after the effective date of the change had the change not occurred.
>
> (e) Benefits granted to a retiree or other annuitant before the effective date of this section and in effect on that date may not be reduced or otherwise impaired.

---

January 1, 1991, the monthly supplement will be equal to the greater of $75 or three percent of their total monthly benefit.

Act of May 26, 1993, 73rd Leg., R.S., ch. 872, § 6.13, 1993 Tex. Gen. Laws 3432, 3464−65 (amended 2017) (current version at TEX. REV. CIV. STAT. art. 6243a-1, § 6.13(a)).

Tex. Const. art. XVI, § 66 [hereinafter Section 66]. DPROA argued that the 2017

Amendments to the Annual Adjustment and the Monthly Supplement "reduced or

otherwise impaired" its members' pension benefits in violation of Section 66.

The System filed a traditional motion for summary judgment (the Motion),

urging two grounds:

> 1. [The 2017 Amendments'] prospective changes to the Annual Adjustment and Monthly Supplement do not reduce or impair the earned monthly pension annuities that Section 66 protects.

> 2. [The 2017 Amendments'] prospective changes to the Annual Adjustment and Monthly Supplement do not reduce or impair any benefits "accrued" or "granted" before HB 3158 took effect.

The System argued that the 2017 Amendments were "purely prospective reforms"

and so did not violate Section 66. They relied heavily on two Texas Supreme Court

cases that had recently addressed and rejected different Section 66 challenges to

changes by the System: *Degan v. Board of Trustees of Dallas Police & Fire Pension

System*, 594 S.W.3d 309 (Tex. 2020) [hereinafter *Degan*], and *Eddington v. Dallas

Police & Fire Pension System*, 589 S.W.3d 799 (Tex. 2019) [hereinafter

*Eddington*].[5] The System argued that the 2017 Amendments did not reduce or impair

---

[5] Both *Eddington* and *Degan* dealt with challenged amendments to the System's Deferred Retirement Option Plans (DROP). DROP accounts were offered as an incentive to retain experienced officers. An officer electing such an account could freeze his retirement benefit and continue working, receiving both a salary and an annuity payment from his retirement account. *Degan*, 594 S.W.3d at 311. The plaintiffs in *Eddington* challenged an amendment to the interest rate recoverable on a DROP account; the *Degan* plaintiffs challenged an amendment to the ways in which DROP account funds could be withdrawn. The supreme court concluded in both cases that the amendments did not violate Section 66. *Eddington*, 589 S.W.3d at 805; *Degan*, 594 S.W.3d at 317.

any constitutionally protected benefit as *Degan* and *Eddington* had construed that term. And they argued that the 2017 Amendments did not reduce or impair any benefits that had already accrued or been granted to a pensioner.

DPROA filed its combined Cross-Motion for Summary Judgment and Opposition to Defendants' Summary Judgment Motion (the Cross-Motion), which argued that the Annual Adjustment and Monthly Supplement were in fact protected service benefits and that the 2017 Amendments reduced or impaired their value. DPROA argued that *Degan* and *Eddington* did not defeat its challenge to the System's changes in this case, and it asked the trial court to deny the Motion and to grant the Cross-Motion.

The trial court granted the Motion and denied the Cross-Motion. The court subsequently awarded $70,200 in attorney's fees to appellees and finalized its summary judgment rulings in its June 1, 2022 Order. This appeal followed.

## DISCUSSION

DPROA brings two issues on appeal challenging the trial court's granting of appellees' Motion and its awarding of attorney's fees.

## The Summary Judgment Motion

DPROA identifies three sub-issues in its challenge to the Motion. It argues that the trial court erred (1) by determining that the change to the Annual Adjustment did not violate Section 66; (2) by determining that the change to the Monthly Supplement did not violate Section 66; and (3) by denying its Cross-Motion. Each

–6–

of these sub-issues challenges the trial court's construction of Section 66 and the 2017 Amendments.

*Standard of Review*

We review a trial court's interpretation of statutory and constitutional language de novo. *Odyssey 2020 Acad., Inc. v. Galveston Cent. Appraisal Dist.*, 624 S.W.3d 535, 540 (Tex. 2021). In doing so, we attempt to discern the intent of the legislature, *see id.*, and of the voters who adopted the constitutional provision, *see Degan*, 594 S.W.3d at 313. "We look for that intent first and foremost in the plain language of the constitutional or statutory provision." *Odyssey 2020 Acad.*, 624 S.W.3d at 540.[6]

On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). When the trial court grants one motion and denies the other, we determine all questions presented and render the judgment that the trial court should have rendered. *Id.*

*Section 66*

The supreme court has given us significant guidance in construing Section 66 of our constitution. The provision embodied a direct response to the supreme court's

---

[6] The trial court requested, and the parties provided, briefing on the legislative history of the 2017 Amendments. We are persuaded that the plain language of the statutes, together with the supreme court's guidance, makes reference to legislative history unnecessary.

own Depression-era opinion in *City of Dallas v. Trammell*, 101 S.W.2d 1009, 1017 (1937), which "subordinated the pension rights of public servants to the authority of the state to diminish or abolish future pension payments." *Degan*, 594 S.W.3d at 313. To that end, Section 66 was added to the constitution to protect the amount of a pensioner's monthly annuity payments from reduction or impairment through subsequent changes to the system. *Id.* at 313–14.

The supreme court has made clear that the benefits protected by Section 66 are the pension's annuity payments. *Degan*, 594 S.W.3d at 316; *Eddington*, 589 S.W.3d at 804–05. And "benefits accrued" for purposes of Section 66 are "those that have been earned by service, not those that may be earned by future service." *Eddington*, 589 S.W.3d at 804. Within the context of Section 66, the terms "accrued" and "granted" have the same meaning. *Id.*

Texas has rejected a strict contractual approach to pension benefits in favor of a flexible system "allowing for prospective changes to benefits not yet granted." *Degan*, 594 S.W.3d at 315; s*ee also Van Houten v. City of Fort Worth*, 827 F.3d 530, 538 (5th Cir. 2016) (acknowledging "Texas' long-held flexible approach permitting municipalities to revise their pension plans in light of changing economic conditions").[7]

---

[7] *Van Houten* addressed a Section 66 challenge to amendment of a cost of living adjustment (COLA) in the Fort Worth pension plan. Although the opinion did not bind the Texas Supreme Court, it adopted the Fifth Circuit's analysis of the text of Section 66. *See Degan*, 594 S.W.3d at 316–17; *Eddington,* 589 S.W.3d at 804. Accordingly, we also draw on the *Van Houten* reasoning in our analysis of that provision.

We employ the reasoning of *Eddington* and *Degan*, and their adoption of the reasoning in *Van Houten*, to adjudge the constitutionality of any change to the pension plan in terms of Section 66. The heart of our inquiry is whether the pensioner would have already earned the payment at issue if he terminated his employment immediately before the change went into effect. If so, the payment was an accrued benefit; Section 66 would therefore prevent its impairment or reduction.

*The Annual Adjustment*

It is undisputed that the 2017 Amendments effected changes to this adjustment, or increase, to a pensioner's annuity payment: what had been an automatic annual 4% increase was limited in at least four ways. After the 2017 Amendments, any annual increase would be (1) tied to the "actual investment return" of the System; (2) permitted to fall within the range of 0%—i.e., no adjustment— and 4%; (3) limited to a percentage of the ratio of the System's assets over its liabilities; and (4) available only after the earlier of three years of retirement or reaching age 62. *See* REV. CIV. STAT. § 6.12(b), (c), (d), (f).

DPROA argues that the 4% annual increase was an accrued (or granted) benefit to all pensioners whose right to the increase vested before the effective date of the 2017 Amendments. It contends that the "future scheduled payments"—i.e., the future annual 4% increases—had been "fully earned" and accrued and therefore "could not be retroactively or prospectively impaired." But DPROA's understanding of an accrued benefit is contrary to the supreme court's construction of that term in

–9–

*Eddington* and *Degan*. An accrued benefit, or the right to one, has literally been earned by the determinative date; for our purposes, that date is the date a plan change becomes effective. Thus, the effective date of the plan-change, payment for an accrued benefit would already be included in a pensioner's monthly annuity payment. And if a plan member terminated his employment the day before the plan-change date, he would immediately be entitled to payment of that benefit. It is not sufficient that either the established pensioner or the new retiree "expected" the benefit, or even that the benefit was part of the plan when his retirement "vested." Neither of those conditions amounts to a benefit's being earned and, therefore, accrued.[8]

Under the pre-2017 plan, the Annual Adjustment's 4% increase was earned "[a]nnually on the first day of October, [when] a retirement pension . . . [was] increased by an amount equal to four percent, not compounded, of the original amount of the retirement pension." As that adjustment to the pension amount was made on October 1, the increase was earned by the pensioner. It became part of his monthly annuity payment that was protected by Section 66. An additional

---

[8] The Fifth Circuit explained the distinction between accrual and vesting when looking at Section 66:

> Benefits accrue on an ongoing basis as service is performed, and accrued benefits are those benefits that have been earned to date. Meanwhile, vesting is a one-time event giving rise to a right to the accrued benefits. "In summary, the notion of benefit accrual quantifies actual benefit accumulations. The concept of vesting determines the nature of an employee's legal right in the accrued benefits." Brown, 37 BAYLOR L. REV. at 123. By its terms, Section 66 prohibits only the reduction or impairment of accrued benefits, and the plaintiffs cannot complain about the reduction of benefits that have not yet accrued.

*Van Houten*, 827 F.3d at 534–35.

adjustment was not earned again until October 1 of the following year, when, once again, the 4% increase was added to the monthly annuity amount to create the new protected payment amount under Section 66. Once earned, each new monthly annuity amount could not be impaired. *See* Tex. Const. art. XVI, § 66.

The method of determining what any year's adjustment would be, however, was not itself an earned, accrued benefit. It was a plan term that could be changed prospectively. All retirement plan terms are not protected benefits within the meaning of Section 66. *See Eddington*, 589 S.W.3d at 804–05. In *Eddington*, a change in the interest rate to be paid on DROP funds did not violate Section 66 because the change was prospective and did not impact funds accumulated in DROP accounts before the amendments became effective. *See id.* at 805; *see also Van Houten*, 827 F.3d at 538 ("If the changes to the pension plan impact only benefits that have not yet accrued, amendment is permissible."). Similarly, the 2017 change in calculating the Annual Adjustment is entirely prospective. The monthly pension payment that a pensioner accumulated over his years of receiving a 4% increase annually was not impacted by the 2017 Amendments. Stated differently, the change in calculating the Annual Adjustment does not negatively adjust any prior accruals or take back any earned interest; therefore, it does not implicate Section 66. *See Degan*, 594 S.W.3d at 316 ("But the pension reforms in [*Eddington* and *Van Houten*] did not negatively adjust prior accruals or take back earned interest and thus did not implicate Section 66."). In the end, the pensioner's accrued benefit is protected,

although it may not increase each year prospectively as much as it did in the past. *See Van* Houten, 827 F.3d at 535 ("The term 'benefits' refers to payments and does not encompass the formula by which those payments are calculated.").

We conclude that the 2017 Amendment's change in how the amount of the Annual Adjustment is calculated does not violate Section 66 of the Texas constitution. We overrule DPROA's first sub-issue.

*The Monthly Supplement*

The 2017 Amendment to the Monthly Supplement was straightforward: the payment was eliminated for any pensioner who was not already receiving it before September 1, 2017. REV. CIV. STAT. art. 6243a-1, § 6.13(b). The title of section 6.13 is "Supplement to certain recipients 55 years of age or older." Before amendment, the plan provided the monthly additional payment of either $75 or 3% for a pensioner with twenty years of service when he reached age 55. After amendment, those same pensioners would continue receiving the Monthly Supplement, *id.* § 6.13(a), but no additional pensioners would receive the benefit.

Again, we are guided by the supreme court's construction of what is protected by Section 66. The protected benefit is the monthly annuity payment. Prior to the 2017 Amendments, that payment increased on the first day of each month, creating a new accrued amount that was the sum of the prior month's payment plus the Monthly Supplement. That increased payment amount was protected by Section 66.

–12–

No one who was entitled to that benefit by reaching the statutory age qualification by September 1, 2017, lost the Monthly Supplement.

Without question, going forward, pensioners who reached age 55 would not become entitled to the Monthly Supplement. However, the Monthly Supplement was not a benefit granted to—i.e., earned by—those pensioners before the effective date of the 2017 Amendments and, therefore, subject to Section 66 protection. *See* Tex. Const. art. XVI, § 66. The change to the Monthly Supplement was purely prospective, and it did not affect the existing right to payment of any pensioner who had already been granted the benefit.

We conclude that the change in who could receive the Monthly Supplement after the 2017 Amendments does not violate Section 66 of the Texas constitution. We overrule DPROA's second sub-issue.

*The Cross-Motion*

We have decided the legal questions raised by the two motions in favor of the System's Motion. Specifically, we conclude that the 2017 Amendments' changes to the Annual Adjustment and Monthly Supplement did not reduce or impair the earned pension annuities that Section 66 protects. We conclude further that the 2017 Amendments' changes to the Annual Adjustment and Monthly Supplement did not reduce or impair any benefits accrued or granted before those changes took effect. Accordingly, the trial court did not err by denying DPROA's Cross-Motion. We overrule DPROA's third sub-issue.

Having overruled each of DRPOA's sub-issues, we affirm the trial court's order granting the Motion in this case.

## Attorney's Fees

In any proceeding under the Texas Declaratory Judgment Act, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." CIV. PRAC. & REM. § 37.009. The statute "entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). The trial court awarded appellees attorney's fees for services at trial and—contingently—for services on appeal.

In this Court, DPROA raises only one challenge to the fee award. It argues that the blended rate of $750 per hour for appellate work, which was adopted by the trial court, was not reasonable and necessary. We determine whether the trial court abused its discretion by awarding fees at that rate by examining the evidence that the rate was reasonable and necessary. *See id.*

When making an award for contingent fees, the trial court may be faced with a level of uncertainty. *See Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020). Nevertheless, the party seeking an award is not excused from providing

"opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id.*

The System submitted the Affidavit of David H. Harper, who was serving as its lead counsel. Mr. Harper testified that: he had been licensed to practice law in Texas since 1991; he has been involved in numerous other appeals in Texas state courts and federal courts, including appeals of summary judgment orders and constitutional challenges; and he is familiar with "the complexities of defending an appeal, the amount of time it takes to prepare relevant appellate filings, and the prevailing rates for appellate practitioners both in Dallas County, Texas, and across the State." Based on his experience, Mr. Harper stated that a reasonable blended hourly rate for appellate services in this case would be approximately $750.

In its opposition to the System's request for fees below, DPROA included this argument concerning the contingent appellate fees:

> DPROA also contends the requested conditional appellate fee award is not reasonable. Defendants' counsel suggest that they have handled the prior appeals and are well-versed in the substantive law at issue, while also opining the services at the court of appeals alone would take over 260 hours. The Court need not agree to this estimate.

DPROA's lead counsel, George W. Vie III, submitted his declaration in support of the opposition. The declaration established that he—like Mr. Harper—is an experienced appellate attorney practicing in Texas. As to the contingent appellate fees sought by the System, Mr. Vie testified:

> It is further my opinion, based on my experience in more than 300 civil appeals before the state courts of appeals, Fifth Circuit, and Texas

–15–

Supreme Court, that the conditional appellate fee award requested is not reasonable and the hours requested (265 hours at the court of appeals) are excessive. I also hold the opinion that the blended rate for the conditional fee application ($750 an hour) is significantly above current rates in the appellate legal community.

The trial judge heard the motion for fees and, following argument of counsel, she granted the motion in part, while giving the System's requested amounts what she called "a significant haircut." The judge significantly reduced the requested amount of the contingent fee award at each appellate level.[9] However, the judge adopted the blended rate of $750 during this discussion.

We understand the significant reductions made by the trial judge to the requested contingent appellate fees to reflect a careful consideration of the expert attorneys' testimony and the circumstances of this case. She accepted the rate as an appropriate one for the appellate work, but she also concluded that the appellate work should take significantly less time than had been estimated. We discern no abuse of discretion in the judge's consideration of the evidence before her from both parties. *See Bocquet*, 972 S.W.2d at 21.

We overrule DPROA's second issue.

---

[9] The amounts requested by the System were reduced by the trial judge as follows:

- For court of appeals briefing      $200,000 requested, reduced to $60,000
- In the supreme court:
    - For petition of review      $50,000 requested, reduced to $30,000
    - For merits briefing      $75,000 requested, reduced to $60,000
    - For oral argument      $50,000 requested, reduced to $30,000

## Conclusion

We affirm the trial court's June 1, 2022 Order.

/Bill Pedersen, III//

BILL PEDERSEN, III
JUSTICE

220644f.p05

Molberg, J., dissents without opinion.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DALLAS POLICE RETIRED
OFFICERS ASSOCIATION,
Appellant

No. 05-22-00644-CV     V.

DALLAS POLICE AND FIRE
PENSION SYSTEM AND
NICHOLAS A. MERRICK IN HIS
OFFICIAL CAPACITY AS
CHAIRMAN OF THE BOARD OF
TRUSTEES OF THE DALLAS
POLICE AND FIRE
PENSION SYSTEM, Appellees

On Appeal from the 192nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-21-11982.
Opinion delivered by Justice
Pedersen, III. Justices Molberg and
Miskel participating.

In accordance with this Court's opinion of this date, we **AFFIRM** the trial court's June 1, 2022 Order.

It is **ORDERED** that appellees DALLAS POLICE AND FIRE PENSION SYSTEM AND NICHOLAS A. MERRICK IN HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE BOARD OF TRUSTEES OF THE DALLAS POLICE AND FIRE PENSION SYSTEM recover their costs of this appeal from appellant DALLAS POLICE RETIRED OFFICERS ASSOCIATION.

Judgment entered this 9th day of November, 2023.